UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| MARIO FORTUNE, AUBREY DUKES, JERMAINE BROOKS, ABRAHAM JOSEPH, DEVAUGHN CAMPBELL, AND CLINT WALKER, | **SECOND AMENDED COMPLAINT**<br><br>15-cv-1539 (JBW) (KP) |
| Plaintiffs, | **PLAINTIFFS DEMAND A TRIAL BY JURY** |
| -against- | |
| THE CITY OF NEW YORK, POLICE OFFICER SAMANTHA STURMAN (TAX 947521), RETIRED POLICE OFFICER VINCENT KENNEDY (TAX 950673), SERGEANT WINSTON WILLABUS (TAX 935969), POLICE OFFICER MICHAEL TEMPERINO (TAX 947535), AND JOHN DOE 1, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs, MARIO FORTUNE, AUBREY DUKES, JERMAINE BROOKS, ABRAHAM JOSEPH, DEVAUGHN CAMPBELL, and CLINT WALKER, by their attorneys, Reibman & Weiner, file their Second Amended Complaint, and allege as follows, upon information and belief:

**PARTIES, VENUE, and JURISDICTION**

1. Plaintiffs Mario Fortune, Aubrey Dukes, Jermaine Brooks, Abraham Joseph, Devaughn Campbell, and Clint Walker are adult male residents of Kings County, within the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees, and

agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

      3.      At all relevant times hereinafter mentioned, Police Officer Samantha Sturman was an adult female employed by the City of New York as members of the NYPD assigned to the 70th Precinct. Defendant Sturman is currently assigned to the 62nd Precinct. Defendant Sturman is sued herein in her official and individual capacities.

      4.      At all relevant times hereinafter mentioned, Retired Police Officer Vincent Kennedy was an adult male employed by the City of New York as a member of the NYPD assigned to the 70th Precinct. Defendant Kennedy is sued herein in his official and individual capacities.

      5.      At all relevant times hereinafter mentioned, Sergeant Winston Willabus was an adult male employed by the City of New York as a member of the NYPD assigned to the 70th Precinct. Defendant Willabus is sued herein in his official and individual capacities.

      6.      At all relevant times hereinafter mentioned, Police Officer Michael Temperino was an adult male employed by the City of New York as a member of the NYPD assigned to the 70th Precinct.  Defendant Temperino is sued herein in his official and individual capacities.

      7.      The Doe defendant was an adult male employed by the City of New York as a member of the NYPD assigned to the 70th Precinct. The Doe defendant is sued herein in his official and individual capacities.

      8.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

9. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

10. Plaintiffs Mario Fortune, Aubrey Dukes, and Abraham Joseph timely served Notices of Claims for malicious prosecution on the municipal defendant and complied with all conditions precedent to commencing an action under state law. At least thirty days have elapsed since service of the Notice of Claims and adjustment and payment thereof has been neglected or refused.

11. This action has been initiated within one year and ninety days of the happening of the events for malicious prosecution of which plaintiffs Mario Fortune, Aubrey Dukes, and Abraham Joseph, complain.

12. This action has been initiated within three years of the happening of the events for which each plaintiff complains.

**RELEVANT FACTS**

13. On August 13, 2013 (the "Date of the Arrest"), the block of 17th Street between Albermarle Road and Beverley Road in Prospect Park was like any other block in the city. People were outside engaging in normal, daily activities on what was a warm summer day. Some were returning from work. Some were leaving their apartments. Some were waiting to meet friends. Some were sitting outside enjoying the weather and each other's company.

14. Around 5 p.m., NYPD vehicles arrived on the Block. Defendants exited these vehicles, started demanding to see identification, and then and without any reason or cause,

3

began arresting or attempting to arrest every African American male on the Block. Defendants arrested each plaintiff and at least four other individuals.

15. Plaintiffs were not engaged in any unlawful or suspicious activity.

16. Plaintiff Abraham Joseph lives in an apartment on the Block and was waiting outside to meet an individual who had responded to Joseph's Craigslist advertisement for the sale of his vehicle. Defendants Willabus and Kennedy approached plaintiff Joseph and began questioning him about his brother, who had filed a complaint with the Internal Affairs Bureau regarding some of the defendants. At the direction of Defendant Willabus, Defendant Kennedy then handcuffed Joseph, searched him, and arrested him.

17. Plaintiff Mario Fortune works as a sous chef. After finishing his shift on the Date of the Arrest, Fortune went to the Block to meet a friend. Defendant Willabus stopped Fortune, questioned him, handcuffed him, and searched him. According to the arrest report, Defendant Temperino was the arresting officer. Defendant Sturman swore out Fortune's criminal complaint.

18. Plaintiff Aubrey Dukes lives in an apartment on the corner of 17th Street and Beverley Road. On the Date of the Arrest, Dukes was standing on the Block while neighbors played dominoes on a card table. At the direction of Defendant Willabus, Defendants stopped, searched, handcuffed, and arrested him. According to the arrest report, Defendant Sturman was the arresting officer.

19. Plaintiffs Clint Walker and Jermaine Brooks, who are brothers, live on a ground floor apartment on the Block. On the Date of the Arrest, Plaintiff Walker came home from work and then went back outside. Defendants Willabus and Kennedy stopped him. Walker

called his mother and told her the police had stopped him. Plaintiff Brooks came outside and asked what was happening to his brother. Defendant Willabus then said, "I'm not here for discussion, cuff them all." Accordingly, defendants handcuffed and arrested Walker and Brooks. According to the arrest report, Defendant Kennedy was the arresting officer.

20. Plaintiff Devaughn Campbell lives in an apartment across the street from where Walker and Brooks live. Campbell was standing on the Block when defendants arrived and starting making arrests. Campbell asked defendants what was going on, and defendant Willabus directed that Campbell be handcuffed and arrested.

21. The searches of plaintiffs yielded no evidence of any guns, drugs, or contraband.

22. Despite the absence of any evidence of wrongdoing on the part of plaintiffs, the defendants formally arrested each of them.

23. The plaintiffs were then transferred to a station house of the 70th Precinct where they were each improperly detained for several hours.

24. The plaintiffs were then transferred to Kings County Central Booking where they were held for several more hours before they were each arraigned on false allegations made by the defendants.

25. Plaintiff Fortune was illegally held in custody for approximately 30 hours.

26. Plaintiff Dukes was illegally held in custody for approximately 24 hours.

27. Plaintiff Brooks was illegally held in custody for approximately 30 hours.

28. Plaintiff Joseph was illegally held in custody for approximately 30 hours.

29. Plaintiff Campbell was illegally held in custody for approximately 30 hours.

30. Plaintiff Walker was illegally held in custody for approximately 30 hours. Plaintiff Walker also was illegally stripped searched while at the Precinct.

31. Specifically, defendant Sturman provided false allegations in support of plaintiff Fortune's criminal complaint, causing him to be falsely charged with two counts of disorderly conduct, and one count consumption of alcohol in public.

32. Plaintiff Fortune was arraigned on these charges, given a future court date and released from custody. He was forced to make several court appearances pursuant to these allegations before his charges were dismissed.

33. Plaintiff Dukes was falsely charged with two counts of disorderly conduct and one count of consumption of alcohol in public pursuant to false allegations made by defendant Sturman.

34. Plaintiff Dukes was arraigned on these charges, given a future court date and released from custody. He was forced to make several court appearances pursuant to these allegations before his charges were dismissed.

35. Defendant Kennedy provided false allegations in support of plaintiff Brooks's criminal complaint, causing him to be falsely charged with two counts of disorderly conduct and one count of obstructing governmental administration. Plaintiff Brooks acceded to an adjournment in contemplation of dismissal at his arraignment.

36. Defendant Kennedy also provided false allegations in support of plaintiff Joseph's criminal complaint, causing him to be falsely charged with two counts of disorderly conduct and one count of marijuana possession.

37. Plaintiff Joseph was arraigned on these charges, given a future court date, and released from custody. He was forced to make several court appearances pursuant to these false allegations before his charges were dismissed.

38. Defendants provided false allegations in support of plaintiff Campbell's criminal complaint, causing him to be falsely charged with two counts of disorderly conduct in addition to one count of a health code violation for allegedly spitting on the ground.

39. Plaintiff Campbell was arraigned on these charges, given a future court date, and released from custody. He was forced to make several court appearances pursuant to these false allegations before he acceded to an adjournment in contemplation of dismissal.

40. Defendants provided false allegations in support of plaintiff Walker's complaint, causing him to be falsely charged with disorderly conduct.

41. Plaintiff Walker was arraigned on these charges, given a future court date. and released from custody. He was forced to make several court appearances pursuant to these false allegations before he acceded to an adjournment in contemplation of dismissal.

42. Upon information and belief, while plaintiffs were in defendants' custody, the defendants created or caused the creation of paperwork memorializing false factual allegations against them in order to justify the illegal search, seizure, and arrest of plaintiffs.

43. Defendants knew the allegations to be false when they made them.

44. The false allegations were then transmitted or otherwise communicated to the KCDA.

45. It was objectively unreasonable for the defendants to arrest plaintiffs since there was no probable cause or reasonable basis to suspect that they had engaged in any unlawful activity.

46. At no time did defendants take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against plaintiffs.

47. The defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

48. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

49. Plaintiffs repeat the allegations contained in each of the foregoing paragraphs as though stated fully herein.

50. Defendants willfully and intentionally seized, searched, imprisoned, and falsely arrested plaintiffs, all without probable cause or a reasonable basis to believe such cause existed.

51. The defendants willfully and intentionally subjected plaintiffs to unlawful detention without any probable cause or reasonable basis to believe that plaintiffs were engaged in any unlawful activity.

52. By so doing, the individual defendants, individually and collectively, subjected the each of the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, denial of due process, and subjected plaintiffs Mario Fortune, Aubrey Dukes, Abraham Joseph, and Clint Walker to malicious use and abuse of process, and malicious prosecution, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

53. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

54. Plaintiffs repeat the allegations contained in each of the foregoing paragraphs as though stated fully herein.

55. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

56. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiffs herein.

57. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiffs' arrest.

58. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

59. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    b. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

    c. Retaliating against officers who report police misconduct; and

    d. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

60. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

    a. *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

    b. *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

    c. *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

    d. *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e. *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

    f. *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

    g. *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.)

    h. *Carmody* v. *City of New York,* 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207

    i. *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

    j. *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

    k. *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

    l. *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

    m. *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

    n. *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

    o. *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

  p. *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

  q. *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

  r. *White-Ruiz v. The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

  s. *Ariza v. City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

61. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

62. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

63. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiffs' rights in particular.

64. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

### THIRD CAUSE OF ACTION

65. Plaintiffs repeat the allegations contained in each of the foregoing paragraphs as though stated fully herein.

66. Plaintiffs were subjected to false arrest, false imprisonment, and unlawful searches of person and property by the defendants.

67. Plaintiffs Mario Fortune, Aubrey Dukes, and Abraham Joseph were each also subjected to malicious prosecution.

68. At no time did defendants have any legal basis for arresting plaintiffs, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

69. The defendants are therefore liable under New York law to plaintiffs for the aforementioned violations.

70. By reason thereof, defendants have caused plaintiffs to suffer emotional injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

### DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

      i.      on the causes of action one through three, actual and punitive damages in an amount to be determined at trial;

      ii.      statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

      iii.      such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
　　　　May 4, 2016

                                                            /s/
                                        James Sanborn (JS-5949)
                                        Reibman & Weiner
                                        26 Court Street, Suite 1808
                                        Brooklyn, New York 11242
                                        Tel: (718) 522-1743
                                        Fax: (718) 522-6093
                                        *Attorneys for Plaintiffs*